Argued and submitted April 3, the decision of the Court of Appeals affirmed on different grounds, the judgment of the circuit court reversed and the case remanded to the circuit court for further proceedings December 19, 1991

RALPH ERNEST MOEN,
*Respondent on Review,*

*v.*

R. S. PETERSON,
*Petitioner on Review.*

(CC 87C-11030; CA A61667; SC S37764)

824 P2d 404

David L. Runner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Walter J. Todd, Salem, argued the cause for respondent on review.

GRABER, J.

## GRABER, J.

This is a post-conviction case in which petitioner claims that he received inadequate assistance of counsel at his criminal trial. Specifically, petitioner contends that he was not informed or otherwise aware of the possibility of a minimum sentence before he pleaded no contest and, consequently, that his conviction was void under the holding of *Hartzog v. Keeney*, 304 Or 57, 742 P2d 600 (1987). The state argues that application of *Hartzog* to petitioner would be retroactive and that, in any event, this court should modify the holding of *Hartzog*.

We hold: (1) The holding of *Hartzog v. Keeney, supra*, applies to petitioner. Applying *Hartzog* to petitioner does not present an issue about the retroactive application of a new rule, because *Hartzog* did not announce a new rule. It merely applied the rule announced in *Krummacher v. Gierloff*, 290 Or 867, 627 P2d 458 (1981). Under that rule, petitioner received inadequate assistance of trial counsel. (2) *Hartzog* is modified to require, in a post-conviction proceeding, that a criminal defendant who was not advised, and did not know, of an applicable minimum sentence, also must prove by a preponderance of the evidence facts that demonstrate prejudice. We remand this case to the post-conviction court for further proceedings on the issue of prejudice and thus affirm the decision of the Court of Appeals, which also remanded the case, on different grounds.

### PROCEDURAL BACKGROUND

In January 1987, petitioner pleaded no contest to a charge of sodomy in the first degree. ORS 163.405.[1] The trial court sentenced him to 20 years' imprisonment with a 10-year minimum. ORS 144.110(1).[2] Petitioner appealed, and in

---

[1] ORS 163.405 provides in part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"* * * * *

"(c) The victim is under 16 years of age and is the actor's brother or sister, of the whole or half blood, the son or daughter of the actor or the son or daughter of the actor's spouse * * *."

[2] ORS 144.110(1) provides:

June 1987 the Court of Appeals affirmed his conviction from the bench, without issuing an opinion. *State v. Moen*, 86 Or App 366, 741 P2d 935 (1987). In July 1987, petitioner sought review in this court, alleging that his sentence was unconstitutionally cruel and unusual and that it was excessive. On September 29, 1987, this court denied review. *State v. Moen*, 304 Or 186, 743 P2d 736 (1987).

Earlier in September 1987, this court had decided *Hartzog v. Keeney, supra. Hartzog* held that appointed counsel does not provide adequate assistance under Article I, section 11, of the Oregon Constitution[3] if counsel fails to advise a criminal defendant, before the defendant pleads guilty, that the defendant may receive a minimum sentence under ORS 144.110(1). 304 Or at 64. *Hartzog* further held, in effect, that the failure to advise is not an error that *per se* requires post-conviction relief, reasoning that:

"if there is evidence from which the post-conviction trial court finds that before pleading guilty the criminal defendant was otherwise aware of the possibility of imposition of a minimum sentence, appointed counsel's failure to advise does not render the conviction void." *Ibid*.

In 1989, petitioner filed a fifth amended petition for post-conviction relief. He alleged, among other things, that he had received inadequate assistance of trial counsel, because his counsel had not informed him that the trial court might impose a minimum sentence under ORS 144.410(1). The post-conviction court made these findings:

"2. Petitioner's trial counsel did not inform petitioner of the possibility of a minimum sentence under ORS 144.110;

"3. Petitioner was aware prior to entry of his no contest plea of the possibility of a minimum sentence under ORS 144.110."

---

"In any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes."

Felons sentenced under this statute are not eligible for release on parole until they have served the minimum term, unless a majority of the Board of Parole votes for earlier release. ORS 144.110(2)(a).

[3] Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

The court drew the following conclusions of law from those facts:

"2. Petitioner's trial counsel's failure to advise petitioner of the possibility of a minimum sentence was inadequate assistance of counsel under the standards of *Hartzog v. Keeney*, 304 Or 57, [742] P2d [600] (1987);

"3. Petitioner otherwise knew that he could receive a minimum sentence under ORS 144.110 and therefore his conviction was not rendered void by his counsel's failure to advise him of that possibility. *Hartzog v. Keeney*, 304 Or at 64."

Accordingly, the post-conviction court "denied and dismissed" the petition.

Petitioner appealed, contending that the post-conviction court erred in finding that he was aware of the possibility of a minimum sentence and in concluding that his conviction was, therefore, not rendered void.[4] The Court of Appeals held that petitioner had received inadequate assistance of counsel under *Hartzog v. Keeney, supra*. The Court of Appeals concluded that counsel must advise defendants of "the full potential exposure to incarceration" in the current case and that "[p]etitioner's knowledge, based on the imposition of a different minimum sentence in a different case, does not meet that standard." *Moen v. Peterson*, 103 Or App 71, 74, 795 P2d 1109 (1990).

The state had argued to the Court of Appeals that *Hartzog*, which was decided after petitioner was sentenced, should not be applied retroactively under the criteria established in *State v. Fair*, 263 Or 383, 502 P2d 1150 (1972). In *Fair*, this court set out three factors for determining whether to apply a new constitutional principle retroactively:

" '* * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. * * *' *Stovall v. Denno*, [388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199, 1203 (1967)]." 263 Or at 388.

---

[4] Petitioner also contended that the trial court was required under both the state and federal constitutions to advise him of the possibility of a minimum sentence under ORS 144.110. The Court of Appeals rejected the argument, and petitioner did not seek review of that holding in this court.

The Court of Appeals held that the factors in *Fair* are inapplicable to post-conviction proceedings. It concluded that *Fair* is relevant only when considering whether to apply a new principle after conviction, but while a case is on direct appeal. It reasoned that a post-conviction proceeding is a "wholly distinct proceeding." 103 Or App at 74. The court noted that a petitioner cannot assert grounds for relief under the Post-Conviction Hearing Act unless those grounds were not asserted and could not reasonably have been asserted on direct appellate review. ORS 138.550(2).[5] That being so, the Court of Appeals determined, application of a new constitutional principle that is articulated in a post-conviction proceeding is prospective rather than retroactive. 103 Or App at 75.

The state filed a petition for review in this court, arguing that the Court of Appeals was wrong to conclude that the application of *Hartzog* to petitioner was prospective. The Court of Appeals treated the petition for review as a petition for reconsideration, ORAP 9.15(1), and allowed it. The court adhered to its former decision but also considered the criteria in *Fair* and concluded that *Hartzog* applies retroactively under those criteria. *Moen v. Peterson,* 104 Or App 481, 802 P2d 76 (1990). The Court of Appeals also noted that the federal cases, on which *Fair* was based, have changed significantly. 104 Or App at 483.

We then allowed the state's petition for review.

## APPLICATION OF *HARTZOG v. KEENEY*

A court must analyze retroactivity only when considering whether to apply a newly announced rule in a given case. Richardson, *Fairness Over Fortuity: Retroactivity Revisited and Revised,* 1989 Utah L Rev 11, 12. If the holding

---

[5] ORS 138.550(2) provides in part:

"[N]o ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section."

in *Hartzog v. Keeney, supra,* was not a new rule, then no question of retroactivity arises. As a threshold issue, then, we consider whether this court announced a new rule in *Hartzog.* We conclude that *Hartzog* did not announce a new rule, but simply applied the general rule announced in *Krummacher v. Gierloff, supra,* to specific facts.

In *Krummacher v. Gierloff, supra,* this court addressed the proper standard for evaluating whether counsel provides adequate assistance to a criminal defendant under Article I, section 11, of the Oregon Constitution. First, the court overturned its previous "farce and mockery of justice" standard. 290 Or at 870-71. The court then held that, although it is impossible to state a "single, succinctly-stated standard, objectively applicable to every case," *id.* at 874, Article I, section 11, requires appointed counsel to "exercise[] reasonable professional skill and judgment" in representing the accused, *id.* at 875. The constitution "call[s] for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Id.* at 872 (footnote omitted). More specifically:

> "[C]ounsel's functions include informing the defendant, in a manner and to the extent appropriate to the circumstances and to the defendant's level of understanding, of the existence and consequences of nontactical choices which are the defendant's to make, so as to assure that the defendant makes such choices intelligently. This function of counsel is particularly important when a defendant is called upon to waive fundamental rights, as by a guilty plea or waiver of jury trial [citation omitted]." 290 Or at 874-75.

In *Lyons v. Pearce,* 298 Or 554, 567, 694 P2d 969 (1985), this court applied *Krummacher,* which concerned counsel's functions during trial, to counsel's functions when a criminal defendant enters a guilty plea, and held:

> "One function a criminal defense attorney performs for a client is to disclose the consequences of a guilty plea and conviction."

The court in *Hartzog v. Keeney, supra,* relied on the passages quoted above from *Krummacher v. Gierloff, supra,* and *Lyons v. Pearce, supra,* in holding that failure to inform a criminal defendant of a possible minimum sentence before

the defendant enters a plea is inadequate assistance of counsel, because it is a failure to advise of a consequence of the plea. 304 Or at 64. The court did no more than simply apply the general standard announced in *Krummacher*, and its specific application to guilty pleas in *Lyons*, in a straightforward manner to the facts of the case. The court did not state a new principle of law, overturn past precedent, or apply an established rule in a novel or unforeseen way. The rule announced in *Krummacher* and applied in *Lyons* to guilty pleas existed before this petitioner entered his plea and before he filed his post-conviction case. That being so, we need not embark on an analysis of retroactivity.

■ Next, we are called on to apply *Hartzog v. Keeney*, *supra*, to petitioner's case. We recognize that the petitioner in *Hartzog* pleaded guilty, while the petitioner in this case pleaded no contest. We believe that the rationale of *Hartzog* is as applicable to no contest pleas as it is to guilty pleas, because criminal defendants who plead no contest waive virtually the same fundamental rights as do criminal defendants who plead guilty. *See* ORS 135.385(2) (court shall advise defendants who plead guilty or no contest that they waive their rights to trial by jury, to confrontation, and against self-incrimination).

The post-conviction court found that petitioner's counsel did not inform him of the possibility of the 10-year minimum. The court also found, however, that "[p]etitioner was aware prior to the entry of his no contest plea of the possibility of a minimum sentence under ORS 144.110," because he had received a five-year minimum sentence in another case. The post-conviction court, therefore, concluded that petitioner was not entitled to relief under the rule in *Hartzog* quoted above. The Court of Appeals held that the post-conviction court's finding was not supported by the record. *Moen v. Peterson, supra*, 103 Or App at 73-74; on reconsideration, 104 Or App at 487.

■ The state contends that the Court of Appeals exceeded its scope of review under ORS 138.650,[6] by "finding

---

[6] Appellate review in post-conviction cases is limited to questions of law. ORS 138.650; ORS 138.220. *See Hartzog v. Keeney*, 304 Or 57, 61, 742 P2d 600 (1987) ("Neither the Court of Appeals nor this court can try questions of fact on appeal in a post-conviction proceeding.").

as fact" that petitioner was unaware of the possibility of a 10-year minimum sentence, when the post-conviction court had found that petitioner was aware of it. The state misconstrues the Court of Appeals' holding. It did not find a fact different than the facts found by the post-conviction court. Rather, it held that the post-conviction court's finding was not supported by the evidence. The inquiry whether a finding is supported by the evidence is a question of law, properly within the Court of Appeals' scope of review. *See Hedin v. Cupp*, 304 Or 66, 70, 742 P2d 604 (1987) (decided the same day as *Hartzog v. Keeney, supra,* and raising the same issue; post-conviction court's finding was binding on the appellate courts, because supported by evidence).

■    We agree with the Court of Appeals that, in this instance, the evidence fails to support the disputed finding. The plea agreement contained no reference to the possibility of a minimum sentence; it disclosed only the maximum sentence. Neither did the trial court inform petitioner of the possibility of a minimum sentence before accepting his no contest plea. The pertinent portion of the transcript contains this exchange between petitioner and the post-conviction court:

"THE COURT:   Are you saying that you knew about mandatory minimums or you did not?

"THE WITNESS:   I did not, sir.

"THE COURT:   If you had gotten one, it seems to me you would know about it, that there are such things.

"THE WITNESS:   I got one [a five-year minimum] in the sentencing in the first trial but it was a recommendation that the Board then upheld.

"THE COURT:   But you knew that there was such a thing as a mandatory minimum?

"THE WITNESS:   Well, only — I knew the judge could sentence me to that but it was never explained to me in this bargaining on the second trial that — that it would be anything like that at all."

That evidence is insufficient to support a finding of petitioner's awareness of the potential application of ORS 144.110 in the present case.

## MODIFICATION OF *HARTZOG v. KEENEY*

The state also asks us to reconsider the assumption, implicit in *Hartzog v. Keeney, supra,* that counsel's failure to advise a petitioner of the possibility of a minimum sentence, when the petitioner otherwise lacks knowledge that a minimum may apply, *per se* has a tendency to affect the result of the prosecution. 304 Or at 63 (quoting *Krummacher v. Gierloff,* 290 Or 867, 883, 627 P2d 458 (1981), that "only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude"). In the *Hartzog* opinion, this court wrote that "advice concerning consequences of entry of a guilty plea [such as the possibility of a minimum sentence] has more than a mere 'tendency to affect the result of the prosecution.' " *Hartzog v. Keeney, supra,* 304 Or at 63. That statement is not true in every case, however. There are many reasons why a criminal defendant might wish to make a plea agreement, even though aware of the potential imposition of a minimum sentence. The possibility of a minimum is not necessarily determinative in a criminal defendant's decision to enter a plea. And, if a petitioner would not have changed the plea of guilty or no contest even with knowledge of a possible minimum sentence, there is no reason to set aside the conviction.

We find the reasoning of the Supreme Court of the United States, when it considered this issue in *Hill v. Lockhart,* 474 US 52, 57-58, 106 S Ct 366, 88 L Ed 2d 203 (1985), persuasive:

> " 'The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice.' " (Quoting *Strickland v. Washington,* 466 US 668, 693, 104 S Ct 2052, 80 L Ed 2d 674 (1984).)

The Court also reasoned that "requiring a showing of 'prejudice' from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of

guilty pleas." *Id.* at 58. That interest is particularly compelling when considering whether to set aside a plea that is otherwise entered knowingly, whether it be a guilty plea or, as in this case, a plea of no contest:

> " 'The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.' " *Ibid.* (quoting *United States v. Timmreck*, 441 US 780, 784, 99 S Ct 2085, 60 L Ed 2d 634 (1979), quoting *United States v. Smith*, 440 F2d 521, 528-29 (7th Cir 1971) (Stevens, J., dissenting)).

■  We hold: In order to prevail in this case, petitioner must show by a preponderance of the evidence[7] that, had counsel informed him of the possibility of a minimum sentence, or had he otherwise been aware of it, he would not have pleaded no contest. Our holding is consistent with ORS 138.530(1)(a), which directs the court to grant post-conviction relief only when "a substantial denial" of constitutional rights occurred in the proceedings resulting in petitioner's conviction, which renders the conviction void. Our holding is also consistent with *Krummacher v. Gierloff*, *supra*, and *Trujillo v. Maass*, 312 Or 431, 822 P2d 703 (1991).

There was evidence in this case from which a fact-finder could have concluded either that petitioner was prejudiced, or the contrary. Petitioner testified that he would not have pleaded no contest, had he known of the possibility of a 10-year minimum sentence. There is contrary evidence in the record, such as petitioner's testimony that the reason for his plea was to avoid a trial at which his children might learn of things that he did not want them to know, and the facts that he received substantial benefits from the plea agreement (including dismissal of four additional charges), that he was aware of the possibility of a 20-year maximum sentence, and that he did not object or comment after the prosecutor,

---

[7] ORS 138.620(2) provides in part:

"The burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence."

speaking in open court in petitioner's presence, recommended a 10-year minimum to the sentencing court.

■ Because the pertinent procedures extant at the time petitioner filed his post-conviction case did not clearly require him to prove prejudice, however, he had insufficient notice that he had to do so. Petitioner might have additional evidence to present on that point. If we were to remand this case to the post-conviction court to consider the issue of prejudice on the existing record, a federal due process question might arise. Accordingly, we remand the case to the post-conviction court for further proceedings wherein petitioner may present any additional evidence on the issue of prejudice, after which the post-conviction court shall make its decision.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.